```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       JACKSON DIVISION
```

```
UNITED STATES OF AMERICA
VS.                                  CRIMINAL NO. 3:07CR181TSL-JCS
CHRISTY STREET
F/K/A CHRISTY MALONE
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the post-trial motions of defendant Christy Street following the jury's finding of guilt on each count of a three-count indictment. The government has responded in opposition to the motions, and the court, having considered the parties' memoranda and submissions, as well as the evidence submitted at trial, concludes for the reasons which follow that defendant's motions are not well taken and should be denied.

On December 19, 2007, a grand jury returned a three-count indictment against plaintiff Christy Street, relating to a certain application for social disability benefits and a related application for children's insurance benefits. Count 1 of the indictment charged that beginning from March 1998 and continuing through February 2003, Christy Street in violation of § 641,

> did steal, purloin and knowingly convert to her own use approximately $111,253 funds belonging to the United States of America by concealing and having knowledge of the occurrence of an event affecting her continued right to any payment from the Social Security Administration for disability benefits; to-wit, the defendant failed to disclose such event with intent to fraudulently secure payment either in a greater amount than was due or when no payment was authorized, all in violation of Section 641, Title 18, United States Code.

Count 2 charged that for the same five-year period, defendant, in violation of 42 U.S.C. § 408(a)(4), knowingly failed to

> disclose the occurrence of an event affecting her initial or continued right to disability social security payments by concealing or failing to report that she was no longer disabled and had returned to gainful employment with intent to fraudulently secure payment either in a greater amount than was due or when no payment was authorized.

Finally, Count 3 charged a violation of 18 U.S.C. § 1001(a)(2), reciting that, on or about January 23, 2003,

> Street in a matter within the jurisdiction of the Social Security Administration of the United States, an agency of the United States of America, . . . knowingly and willfully made or caused to be made a false and fraudulent material statement or representation, in that the defendant told a Claim Representative and Technical Expert of the SSA that she was working and wanted to have her disability benefits stopped, that her husband and his sister applied for disability on her behalf in 1998, that she had no knowledge that disability benefits had been paid to her until receiving a SSA Form 1099 from the Internal Revenue Service in January 2003 and that she did not sign any application for benefits, when in truth and in fact she filed Application for Children's benefits as part of her disability claim dated March 6, 1998.

The charges arose from $111,253 in social security disability benefits paid to Street individually and as representative of her minor son pursuant to applications for disability and children's insurance benefits signed by Street on January 8, 1998, and March 1998, respectively, after she had been diagnosed with ovarian cancer. Payment of the benefits was made via direct deposit into two bank accounts owned, at least in part, by Street over an

approximately five-year period, from March 1998 to February 2003. In fact, Street had actually returned to work in March 1998, about the same time as the disability benefits began to be deposited into Street's joint account and two months before children's insurance benefits were paid to her as representative payee via direct deposit; and yet, despite the fact that the applications for benefits advised of an applicant's obligation to notify the Social Security Administration (SSA) in the event the applicant returned to work, Street did not notify the SSA until January 2003 that she had returned to work in March 1998.  The government maintained that over $74,000 in benefits were paid to Street on account of her application for benefits and, save one check in March 1998, were deposited directly into her and Mike Malone's joint account and that over $37,000 in benefits were paid on account of the application for children's insurance benefits which were directly deposited into a savings account for her son's benefit, for which she was a signatory.

    In January 2003, Street went to the SSA office in Jackson, Mississippi, asserting she had only recently learned about these benefit payments, and claiming that, unbeknownst to her, her former husband, Mike Malone, and his sister, Linda Langle, had applied for benefits while she was ill, and that Mike Malone had directed that benefits be paid into an account of which she knew

nothing and that Malone had thus been receiving the benefits without her knowledge.

The government's theory presented at trial was that, in fact, Street knew she had applied for these benefits, or knew at least that she was receiving these benefits; that she also knew that, having returned to work, she was no longer entitled to receive benefits; and yet not only did she fail for nearly five years to notify SSA that she had returned to work, but she also falsely reported to the SSA in January 2003 that without her knowledge, Mike Malone and his sister had applied for and Malone was receiving the benefits in an account she knew nothing about.

For her part, the defense did not deny that Street returned to work in February 1998, or that Street's signature appeared on both the January 8, 1998 application for disability benefits and the March 6, 1998 application for children's insurance benefits. Rather, the version of facts offered by the defense was that the applications were presented to Street by Malone and Linda Langle, who at the time was employed by the state agency which makes medical determinations for social security disability benefits, and that although she signed the applications, she had no recollection of doing so, owing to the fact that she had been undergoing chemotherapy during the time period in which the applications were made.  The defense maintained that Malone, who has pled guilty to violating 18 U.S.C. § 641, submitted the

applications and exclusively enjoyed the use of the social security funds over the five-year period.  Street maintained that because Malone controlled their financial affairs and screened her mail, she had no knowledge that the disability funds were being deposited into the couple's joint account or that the SSA had periodically attempted to contact her to inquire whether she had returned to work.  According to the defense, Street first became aware that benefits had been paid when she received a 2002 1099 from the IRS, which was forwarded to her new address after she and Malone separated.  The defense asserted that receipt of the 1099 prompted Street to contact the SSA in January 2003, and because she wrongly assumed that Malone had established a separate bank account to perpetrate his fraud, she erroneously, but innocently, reported that the funds were being deposited into a separate account of which she had no knowledge.

At trial, at the conclusion of the government's case-in-chief, Street made her motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, which was denied.  Street proceeded with her defense, following which she renewed her Rule 29 motion, which was again denied.

The court, having undertaken an exhaustive review of the documentary evidence and testimony presented at trial, concludes that, viewing the evidence in the light most favorable to the government and construing all reasonable inferences in favor of

the government, a reasonable-minded jury could find from the evidence presented at trial that Street was guilty of each of the three counts charged in the indictment. See United States v. Deville, 278 F.3d 500, 504 (5th Cir. 2002) (explaining that "[t]he guiding standard on a motion for judgment of acquittal is whether viewing the evidence most favorably to the Government, a reasonable-minded jury could find the admissible evidence sufficient to support the jury's verdict of guilty," and that in conducting this analysis, "all reasonable inferences and credibility choices must be made in favor of the jury verdict")(internal quotations and citations omitted).[1]

---

[1] The court recognizes defendant's argument in her motion for judgment of acquittal that because the proof at trial showed that she told SSA that she did not remember signing the applications, as opposed to stating that she did not sign the applications, as was alleged in the indictment, there was a variance between the indictment and the proof such that the court "can no longer be certain that the jury's findings as to Count 3 reflect the findings of the grand jury that voted on the indictment." The court's review of the proof at trial shows that the testimony on this issue was not as unequivocal as Street represents.

On direct examination, SSA employee Theresa Murphy testified that during her January 23, 2003 interview with Street, she heard Street make the statement that she did not ever sign the application. On cross examination, counsel asked Murphy to review a report authored by fellow SSA employee Donna Johnson, who was also present during Street's initial interview and who also testified at trial. In her report, Johnson wrote that Street "states that she never remembers signing any applications for the benefits herself." In response to questioning by counsel, Murphy agreed with defense counsel that Street's saying that she did not remember signing was not the same as saying that she had never signed. The witness, however, did not change her testimony or retract her testimony as to what she heard Street say. Thus, the court is not persuaded that a variance occurred. See United States

Accordingly, defendant's motion for judgment of acquittal will be denied.[2]

Turning to defendant's motion for a new trial, Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  "A motion for new trial 'is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial ... should be invoked only in exceptional cases....'" United States v. Sipe, 388 F.3d 471, 492-93 (5th Cir. 2004) (quoting United States v. Robertson, 110 F.3d 1113, 1120 n. 11 (5th Cir. 1997)).

In her motion for a new trial, defendant re-urges statute of limitations and duplicity arguments which were presented in her pretrial motion to dismiss.  She additionally argues that the jury's consideration of evidence which should have been excluded, either because it was offered in connection with the alleged time-barred count 1 or because it related to conduct which occurred

---

v. Mitchell, 484 F.3d 762, 769 (5th Cir. 2007) ("A material variance occurs when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense.") (internal citations and quotations omitted).

[2] The court will likewise deny Street's motion to supplement motion for judgment of acquittal, finding that the government did not withhold exculpatory evidence.

7

after the time frame alleged in count 3, requires a new trial. The government denies that Street is entitled to relief. Specifically, it maintains that: (1) count 1 was not time-barred; (2) defendant waived the duplicity argument because she first presented it in her rebuttal brief offered in support of her motion to dismiss; (3) in any event, count 1 was not duplicitous; and (4) defendant was not prejudiced by the court's evidentiary rulings.

Having considered the parties' arguments, the court remains of the opinion that under applicable Fifth Circuit authority, an alleged violation of paragraph one of § 641 may be charged in a single count of an indictment as a continuing offense. The court's earlier ruling on this issue was not based on either party's interpretation of the language of the indictment whereby count 1 could be construed as a continuing offense; rather, the court concluded that under Fifth Circuit authority, a charge of conversion or theft under the first paragraph of § 641, in and of itself, could amount to a continuing offense.

The court did not previously address defendant's pre-trial duplicity arguments as it was satisfied that disputed language in count 1 was not intended to charge either a separate violation of the second paragraph of § 641, or some type of "hybrid" crime under § 641 and 42 U.S.C. § 408(a)(4). The court concluded and remains persuaded that the language was a permissible explanation

under Rule 7(c)(1) as to the means by which the crime was committed.[3]

Regarding the defendant's statute of limitation argument, the court previously held that a fact issue existed as to whether count 1 was barred by the statute of limitations because Street had lost access to her joint account with Mike Malone in October 2002.  Review of the current motion has persuaded the court that this earlier ruling was erroneous.  At the time it decided the pre-trial motion, the court had not been made aware that the $111,253 which Street was charged in count 1 with stealing or converting represented the total amount of funds paid on account of both applications signed by Street.  In reaching the conclusion that a fact issue existed, the court reasoned that if Street had lost access to her and Mike Malone's joint account in October 2002, then count 1 would be barred by the five-year statute of limitations because Street necessarily could not have converted any funds for her own use during the limitations period if she had no access to the formerly joint account.  In so ruling, the court erroneously assumed that the $111,253 was the total paid on behalf of Street's own application.  However, what was not made clear by the government in response to defendant's motion to dismiss and

---

[3] The court rejects the government's argument that this duplicity argument was waived, but the court rejects the duplicity argument on the merits.

9

what did become clear from the evidence at trial is that the $111,253 charged in count 1 represents approximately $74,000 paid on account of the application for disability benefits and approximately $37,000 paid on account of the application for children's insurance benefits. Thus, it seems that the government's argument regarding the continuing offense alleged in count 1 was that Street had a single scheme to collect social security benefits which involved two applications for benefits and the depositing of benefits into two different accounts. Under this scenario, count 1 is not time-barred by virtue of the fact that Street lost access to the joint account in October 2002, because deposits into the child's account continued until February 2003 and Street continued to have access to the child's account and to his benefits through that time, which is within the limitations period.

Finally, the court is not persuaded that the admission of Exhibits 25, 26, 27 and 28 was in error. These exhibits are documents that were produced by Street to SSA employee Stephen Woods during his investigation of Street's claim that Malone and Langle had filed for disability benefits on her behalf without her knowledge. Street argues that the court's admission of these documents over her objection that they were not relevant and that their probative value was substantially outweighed by their unfair prejudice, allowed the jury to "reach a faulty conclusion that the

10

2003 and 2004 letters somehow equated to a misleading and deliberately false material statement to the Social Security Administration on January 23, 2003." The government takes the position that the documents were properly admitted as admissions by a party-opponent.

At trial, relative to these documents, defendant effectively withdrew her objection to all but the admission of Government Exhibit 28, a September 29, 2004 letter from Street to accountant Mitchell Blount, whom she had apparently employed to aid her in dealings with the IRS. In the letter, Street set forth a time-line of the events surrounding the application for disability benefits and her discovery of the fact that she had been receiving disability benefits. Defendant provided the letter to case agent Stephen Woods in an effort to exculpate herself. The government sought to introduce the document through Woods.

After the court overruled defendant's objections on the basis of relevance and undue prejudice, Woods proceeded to testify that although Street apparently provided the letter in an effort to exculpate herself, the time-line in the letter was inconsistent with what she had told SSA employees on January 23, 2003. He explained that the September 2004 letter showed that Street received a 2001 1099 in February 2002, and that if this time-line was accurate, then Street would have discovered the payments a year before she reported her ex-husband's alleged fraud to SSA

11

officials, a position that was likely inconsistent with her claim to SSA employees in January 2003 that she had only recently come to learn of the payments through receipt of a 2002 1099.  On cross-examination, Woods reaffirmed his testimony on direct examination that he did not necessarily regard the differences in the time-lines presented as evidence of dishonesty on Street's part, but instead, recognized that the difference might be attributable to a faulty memory on Street's part.  The tenor of Woods' testimony was that he regarded the discrepancies as impetus for further investigation of Street's claim that she did not know that she had applied for and had been receiving social security benefits.

The court remains persuaded that the document was relevant to an explanation as to why Woods continued his investigation of Street and was further relevant as to Street's knowledge of her receipt of disability benefits.  The court concludes that the admission of the letter, in and of itself, was not unfairly prejudicial to Street.  That is, the evidence admitted was not of the type which would have the natural effect of inflaming the jury's emotions or biases.  Instead, defense counsel was able to elicit testimony from Woods wherein Woods conceded that the discrepancies could have been an oversight on Street's part.

This being said, Street's real point of contention seems to be that in her closing argument, counsel for the government,

pointing to this letter and the other documents submitted by Street to Woods, impermissibly argued, and the jury perhaps impermissibly concluded, that Street should be convicted under count 3 on the basis of her putative "web of deceit" constructed after the date alleged in the indictment and not because she made misrepresentations to SSA employees on January 22, 2003.

During the government's closing argument, counsel pointed to Street's misstatements to SSA employees on January 23, 2003, i.e., that she did not know that she was receiving disability benefits and that her ex-husband had established a checking account that she did not know about.  Counsel further argued that the inconsistencies between the time-lines presented to Woods as well as other alleged inconsistencies in the explanations which Street provided to SSA employees at various points in the investigation created a maze of misrepresentations concerning the disability.

Although it is not clear to the court that she was doing so, to the extent that counsel for the government suggested in her closing argument that Street could be convicted on count 3 if the jury believed that she had lied to Agent Woods during his 2007 investigation, the court finds that the interest of justice does not compel a new trial on count 3, as the jury was instructed that Street "was not on trial for any act, conduct, or offense not alleged in the indictment."  Accordingly, defendant's motion for a new trial will be denied.

Based on the foregoing, it is ordered that defendant's motions for judgment of acquittal, to supplement motion for judgment of acquittal and for a new trial are denied.

SO ORDERED this the 19th day of September, 2008.

                                          /s/ Tom S. Lee
                                     UNITED STATES DISTRICT JUDGE